IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Brittany Ruffin, individually, and as Personal Representative for the Estate of J.R., <br><br> Plaintiff, <br><br> vs. <br><br> Kevin Davis, <br><br> Defendant. | C/A No.: 3:23-cv-1425-SAL <br><br><br><br> **ORDER** |

This matter is before the court for review of the December 10, 2024, Report and Recommendation (the "Report") of United States Magistrate Judge William S. Brown, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), which recommends granting in part and denying in part Defendant Kevin Davis's ("Davis") amended motion for summary judgment. ECF No. 79. Davis filed objections to the Report on January 8, 2025. ECF No. 83. Plaintiff Brittany Ruffin ("Plaintiff"), individually and as personal representative of the estate of J.R. ("J.R."), timely filed a reply. ECF No. 85.[1] For the reasons below, the court adopts the Report in full.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff originally sued Davis, as well as William Hollbrook, the City of Columbia Police Department, and the City of Columbia. ECF No. 1. Plaintiff has stipulated to the dismissal of all parties except Davis. ECF No. 27, 69.

The magistrate judge's recitation of the essential facts of this case are incorporated. On

---

[1] Plaintiff is the mother of J.R., who was 17 years old at the time of his death. *See* ECF No. 62-3.

April 8, 2020, Davis, a police officer with the City of Columbia Police Department, received a text message from Dylan Gunnels, president of the Seminary Ridge neighborhood association, stating that Gunnels had received reports of teenagers riding bikes and looking in cars. *Id.* at 5–6; ECF No. 55-4 at 2. In response, Davis went to patrol the neighborhood. ECF No. 55-2 at 6. He was in uniform, drove his marked patrol vehicle, and carried his duty firearm. *Id.* at 5.

According to a written statement Davis provided to the South Carolina Law Enforcement Division ("SLED"), he arrived at the neighborhood and observed J.R. on the street. ECF No. 55-2 at 6. Davis stated that he saw J.R. step behind a house and reappear with a bag. *Id.*[2] As Davis attempted to approach J.R. while in his marked patrol vehicle, J.R. walked away from him. *Id.* Davis then exited his patrol car to stop J.R., but J.R. fled on foot. *Id.*[3]

Davis's Body Worn Camera ("BWC") recorded audio and video of the events. ECF No. 55-7. Additionally, video surveillance from Eau Claire High School captured portions of the incident without audio. ECF No. 55-9.[4] During the foot chase, J.R. disregarded multiple commands to stop. ECF No. 55-7; ECF No. 55-2 at 6. Davis stated that he observed J.R. reaching for his waistband, which Davis believed to be an attempt by J.R. to retrieve a weapon. ECF No. 55-2 at 6. After running for a short time, Davis asserted he saw J.R. stop and crouch down. *Id.* at 7. When

---

[2] Plaintiff argues in briefing that the referenced bag belonged to J.R. and was with him the entire time. *See* ECF No. 62 at 11–13, *see also* ECF No. 62-3 ¶ 5.

[3] As stated by Davis, after J.R. began to flee, "[t]he events of the next forty-two (42) seconds," ending with J.R.'s death, are the subject of this lawsuit. ECF No. 55-1 at 5.

[4] In briefing, Davis argues J.R. "turn[ed] to face the officer and point[] the weapon at the officer." ECF No. 55-1 at 8–10. In support, Davis submits still shots from the electronic evidence. *See id.* The undersigned agrees with the magistrate judge that "[i]t is difficult to discern J.R.'s movement from either video" and that "[w]hile Davis supplies a still image, purported to show J.R. pointing a gun at him, the image is highly pixelated" and the "video does not clearly show the weapon at issue or it being aimed in any particular direction." ECF No. 79 at 19–20.

J.R. crouched down, Davis stated he observed J.R. reach toward his leg. *Id.* Davis also believed this to be an attempt to gain control of a weapon, which Davis believed may have fallen from J.R.'s pants while he ran. *Id.*

> Davis explained the subsequent events as follows:
>
> I do not recall the exact details of what occurred after I saw the suspect crouch down. But to the best of my knowledge my next recollection after that point was hearing gunshots and seeing the suspect running perpendicular of my location west alongside the side of the Eau Claire High School. I observed the suspect to have possession of a black pistol in his hand, I was in fear for my life. I believe I gave the suspect commands to drop his gun at this point, although I am unsure of the exact timing of these commands, and it happened so quickly I am unsure if I was able to actually give them.[5]
>
> I observed the suspect turn his head towards me, in what I believed was an attempt to turn his body towards me and raise the firearm (black pistol with a brown handle) to be at a position to fire towards me, fearing for my life and to defend myself from great bodily injury or death, I gained my sight picture of my pistol and fired approximately four (4) shots towards the suspect. I then observed the suspect fall to the ground, and I could see 1 wound to the front of the suspect's forehead.

ECF No. 55-2 at 7. J.R. was pronounced deceased shortly thereafter. ECF No. 55-12. A pistol was located next to J.R.'s right hand. ECF No. 55-13 at 2. Video and DNA evidence leaves no genuine dispute over whether J.R. was carrying a firearm, ECF No. 55-7, ECF No. 53-15; however, SLED's investigation revealed no forensic evidence suggesting that J.R.'s gun had been fired. ECF No. 55 at 2–18.

On April 7, 2023, Plaintiff filed a complaint alleging causes of action under 42 U.S.C. § 1983 for (1) improper search and seizure, excessive force, and due process violations, (2) deliberate indifference, and (3) violation of the Fifth Amendment. ECF No. 1. Davis filed a motion for summary judgment on June 28, 2024, and an amended motion for summary judgment on July

---

[5] The record is undisputed that Davis issued the following commands: "stop running," "show me your hands," and "get on the ground." *See, e.g.*, ECF No. 55-1 at 20–21, ECF No. 55-7.

3

1, 2024. ECF Nos. 53, 55. On July 15, 2024, Plaintiff moved to strike Davis's amended motion for summary judgment, and he filed a response to the amended motion for summary judgment. ECF Nos. 61, 62.

The magistrate judge recommends denying Plaintiff's motion to strike and partially granting Davis's amended motion for summary judgment, allowing Plaintiff's Fourth Amendment excessive claim to proceed to trial. ECF No. 79.

## LEGAL STANDARDS

### I.     Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of proving to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations asserted in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## II.     Report and Recommendation

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections

5

need not be novel to be sufficiently specific. *Id.* Thus, "[a]n the absence of specific objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

## DISCUSSION

Neither party objects to the magistrate judge's recommendation to deny Plaintiff's motion to strike and to grant Davis's motion for summary judgment in part. Thus, the court adopts in full the magistrate judge's recommendation, denying Plaintiff's motion to strike and granting Davis's motion for summary judgment on all of Plaintiff's claims except her Fourth Amendment excessive force claim.

Davis objects to the magistrate judge's recommendation to deny his motion in part as follows:

> The Magistrate's recommendation in Section 5(iii) to deny summary judgment as to Plaintiff's excessive force claim is based on the answer to one question: whether Davis was confronted by an immediate threat of harm rendering his use of deadly force reasonable under the circumstances.

ECF No. 83 at 2.

"[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citing *Tenn. v. Garner*, 471 U.S. 1, 8–9 (1985)) ("the *Garner* factors"). Among these factors, the Fourth

6

Circuit has held that the second—immediate threat—is "the most important." *Lewis v. Caraballo*, 98 F.4th 521, 531 (4th Cir. 2024).

Davis also asserts qualified immunity, which shields government officials from civil liability unless their conduct "violate[s] clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014); *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

## I. Undisputed Facts

The record establishes three undisputed facts: (1) J.R. possessed a firearm; (2) J.R. ignored Davis's repeated commands to stop running, get on the ground, and show his hands; and (3) J.R. turned to face Davis in the final moments of the chase, as shown by the impact of Davis's round. But key factual disputes remain, with each party offering conflicting interpretations of the evidence. *See* ECF No. 55-1 at 12 ("Instead of complying with the officer by putting down the gun, showing his hands, or getting on the ground, the suspect pointed a gun at the officer from the top of the ridge escalating the foot pursuit into a gun battle."), ECF No. 62 at 5 ("The evidence, when viewed in the light most favorable to the Plaintiff, shows that JR DID NOT point a weapon at the officer within firing range, JR DID NOT repeatedly raise his weapon in a firing position

7

while running, and JR DID NOT turn to face [Davis] *to gain a sight*.") (emphasis added).[6]

The Fourth Circuit has held that deadly force is justified where "the objective basis for the threat was real, but the [suspect's weapon] was not." *See Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013). Conversely, deadly force violates the Fourth Amendment where the suspect's weapon "was real," but "the threat was not." *Id.*

Regarding noncompliance, the Fourth Circuit has stated that "noncompliance alone is insufficient to justify deadly force." *Aleman v. City of Charlotte*, 80 F.4th 264, 286 (4th Cir. 2023). Instead:

> the failure to obey commands by a person in possession of, or suspected to be in possession of, a weapon only justifies the use of deadly force if that person makes some sort of furtive or other threatening movement *with the weapon*, thereby signaling to the officer that the suspect intends to use it in a way that imminently threatens the safety of the officer or another person.

*Id.* at 287 (emphasis added) (quoting *Knibbs v. Momphard*, 30 F.4th 200, 225 (4th Cir. 2022) (summarizing Fourth Circuit precedent)). Here, while it is undisputed that J.R. turned his head, there is no *undisputed evidence* that he made a furtive or threatening movement with the weapon.

## II.     Objections

### A.  Consideration of Plaintiff's Evidence

The court turns to Davis's specific objections. Davis first objects to the magistrate judge's reliance on "Plaintiff's unverified allegations or the conjecture of her counsel." ECF No. 83 at 2.[7] But the magistrate judge correctly determined that a genuine issue of material fact exists,

---

[6] The parties do not appear to dispute that J.R. turned his head, but they do dispute why he turned his head and whether J.R.'s movement rendered Davis's response reasonable or excessive under the circumstances.

[7] The magistrate judge noted, for example, Plaintiff's explanation provided in the complaint as to why J.R. was carrying a gun. *See* ECF No. 79 at 3 n.1 (citing ECF Nos. 62 at 3, 1 ¶ 37).

warranting denial of summary judgment. The court overrules Davis's objection on this ground.

### B. Reliance on *Knibbs*

Next, Davis argues *Knibbs* is inapplicable because it involved a private residence at night, while this incident occurred on public property during rush hour. ECF No. 83 at 5.

But the magistrate judge relied on *Knibbs* only in analyzing the first *Graham* factor—the severity of the crime being investigated. In *Knibbs,* the Fourth Circuit explained:

> The first *Graham* factor counsels us to consider the severity of the crime the officer was investigating. At first blush, this would seem to favor the Estate. Under its evidence, Deputy Momphard reapproached Knibbs' home to investigate what was either a civil dispute between neighbors or at most an attempted misdemeanor property crime. But our analysis must focus "on the circumstances as they existed at the moment the force was used." *Anderson*, 247 F.3d at 132. Here, Knibbs' racking of his shotgun is what initially caused Deputy Momphard to fear for his life. That action was unrelated to the original reason that he approached the home that night (to investigate the boards with nails in the road). So, even when reading the facts in the light most favorable to the Estate, this factor is not particularly germane to our analysis. *See id.* at 131–32 (assuming that a suspected violation of a concealed weapons ban was a minor infraction but nonetheless deeming it irrelevant because at the moment the officer used deadly force, the suspect made furtive movements causing the officer to reasonably believe that the suspect "posed a deadly threat to himself and others").

*Knibbs*, 30 F.4th at 215.

Similarly, while Davis was investigating reports of teenagers riding bikes and looking into cars, his claim of fearing for his life arose later. *See* ECF No. 79 at 16. Thus, the magistrate judge's application of *Knibbs* was appropriate.

The magistrate judge also references *Knibbs* in considering the second *Garner* factor— whether the suspect poses an immediate threat to the safety of the officers or others. As the magistrate judge stated:

> [I]t is undisputed that J.R. disobeyed several of Davis's commands. The Fourth Circuit has recognized that "once [an] officer issue[s] a verbal command, the character of the situation transform[s]." *See Knibbs*, 30 F.4th at 220 (quoting

9

> *Hensley v. Price*, 876 F.3d 573, 585 (4th Cir. 2017)). In *Knibbs*, the Fourth Circuit summarized a series of cases in which the court found that officers' use of deadly force was reasonable when "the suspects [made] furtive movements after readily recognizable law enforcement officers ordered a suspect to drop a weapon outside the confines of his own home." *Id.* at 220–21. The *Knibbs* Court concluded, "[m]ost importantly, the suspects in those cases made furtive movements toward a perceived firearm while disobeying the officer's command not to do so. Such actions, we held, would rightfully cause a reasonable officer to fear that the suspect intended to cause imminent deadly harm." *Id.* at 220 (citing *Slattery*, 939 F.2d at 215-16; *Anderson*, 247 F.3d at 128, 131).

ECF No. 79 at 17–18.

Davis argues the magistrate judge's reliance on *Knibbs* is incorrect where all the cases analyzed by the Fourth Circuit in *Knibbs* "relate to the circumstances of a private residence." ECF No. 83 at 7. Davis further objects that *Knibbs* involved a suspect complying with a single command, while J.R. ignored multiple commands and turned to face Davis with a weapon in hand:

> The *Knibbs* Court cloaked its conclusion in the fact that, based on the evidence, "Knibbs never pointed his weapon at [the Officer] or made any furtive movements, thereby rendering unjustified the deadly force used against Knibbs." *Knibbs* had a right to possess a weapon in his home and, without more, the use of deadly force is not justified. *Id.* at 224. In the case at bar, the forensic evidence reflects DNA on the trigger of the decedent's pistol, and he was shot in the forehead. The only conclusion that can be drawn from this evidence is that the decedent had to be facing the officer at that moment just as the officer recalled. The decedent's intent is irrelevant. This forensic evidence is consistent with Davis's statement and his perception of the threat which is the complete opposite of the facts in *Knibbs*.
> 
> Based on the evidence, Knibbs appeared to comply with the officer's SINGLE demand and was holding his weapon in a non-firing position, did not know that law enforcement was present, and did not make a movement that could have been interpreted as threatening before being fired upon. By contrast, in this case, based on the actual evidence before the court, the decedent ignored Davis's TEN commands, raised his weapon, and faced the officer within firing range. These cases could not be more different, and it was plain error to use *Knibbs*, a castle doctrine case, to evaluate the imminent threat presented in the case at bar.

*Id.*[8]

---

[8] Davis also argues that "*Knibbs* is set against the backdrop of the Constitutional right that a person has a right to arm himself in his residence without fear of being shot by police" and "Davis had no

10

The undersigned disagrees with Davis's arguments that the Fourth Circuit's analysis in *Knibbs* cannot inform the court's analysis in this case and finds appropriate the magistrate judge's reliance on *Knibbs* to the extent that he did. Here, as in *Knibbs*, the court is mindful that "'[s]pecial difficulties can arise during summary judgment' in use of deadly force cases like this one because [the defendant] 'has killed the only other potential witness' that can directly refute his account of what happened . . . ." 30 F. 4th at 216 (citing *Stanton v. Elliott*, 25 F.4th 227, 234 (4th Cir. 2022)). The Fourth Circuit has cautioned that it such cases, it is "easy to overvalue the narrative testimony of [the defendant] and undervalue potentially contradictory physical evidence." *Id.* (citing *Stanton*, 25 F.4th at 234).

Here, Davis testified he did not recall the exact details of what occurred after J.R. crouched down, he heard gunshots, and he "observed the suspect turn his head towards me, in what I believed was an attempt to turn his body towards me and raise the firearm . . . ." ECF No. 55-2 at 7. However, no shots are heard on the BWC video at the point referenced by Davis, and the forensic evidence does not support any shots having been fired by J.R. Davis further stated he recalled firing four shots while the video evidence establishes he fired nine shots.

The undersigned agrees with the magistrate judge that Davis's "statement is ambiguous beyond the moment Davis says he saw J.R. crouch" and further agrees that, at the summary judgment stage, ambiguities like this must be resolved in Plaintiff's favor. *See HealthSouth Rehab. Hosp. v. Am. Nat. Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996) ("[T]he court must construe all

---

reason to believe that the suspect had any right to possess a weapon in a public place." ECF No. 83 at 5–6. But as stated by the magistrate judge, *see* ECF No. 79 at 17, in *Knibbs*, the Fourth Circuit summarized a series of cases in which the court found that officers' use of deadly force was reasonable when "the suspects [made] furtive movements *after* readily recognizable law enforcement officers ordered a suspect to drop a weapon outside the confines of his own home," 30 F.4th at 221 (emphasis in original), a situation Davis specifically argues is like this case. *See* ECF No. 55-1 at 23–24 (citing *Knibbs*).

11

inferences and ambiguities in favor of the nonmoving party"); *see also Stanton*, 25 F.4th at 233 (instructing courts to "be careful at summary judgment to avoid simply accepting an officer's self-serving statements and must consider all contradictory evidence") (citations omitted)). The court also agrees with the magistrate judge that the evidence concerning J.R.'s movements at the relevant moment is also ambiguous and must be resolved in Plaintiff's favor. *See id.*

Every case cited by Davis in his objection to the magistrate judge's recommendation involves *undisputed evidence* that a suspect moved his *hands* in what was perceived to be a threatening manner. *See Elliott v. Leavitt*, 99 F.3d 640, 642 (4th Cir. 1996) (finding deadly force reasonable where, through a car window, "Leavitt and Cheney confronted an intoxicated individual pointing a gun at them from only a few feet away with his finger on the trigger"); *Greenidge v. Ruffin*, 927 F.2d 789, 790 (4th Cir. 1991) ("Ruffin then observed appellant Leonard Greenidge reach for a long cylindrical object from behind the seat, which she believed to be a shotgun (the object later turned out to be a wooden nightstick). Ruffin fired her weapon at Greenidge."); *Slattery v. Rizzo*, 939 F.2d 213, 215 (4th Cir. 1991) ("By this time Officer Rizzo had drawn his service revolver. He could not see Slattery's left hand clearly. This was the hand away from the officer. Rizzo was, however, able to see that the hand appeared to be partially closed around an object. Slattery turned his head slowly towards Rizzo and turned away. Rizzo again ordered Slattery to put up his hands. Slattery turned his entire upper body towards the officer, who could still not see Slattery's left hand. Rizzo then believing that Slattery was coming at him with a weapon, shot him once in the face with his revolver. The object in Slattery's hand was later determined to be a beer bottle.").

Here, unlike the cases Davis cites—where suspects made explicit threatening movements—there is no undisputed evidence that J.R. did so. The court overrules Davis's second

objection.

### C. Alleged Use of Hindsight

Davis next argues the magistrate judge improperly relied on hindsight rather than evaluating the situation from the perspective of an objectively reasonable officer on the scene. ECF No. 83 at 9. Davis takes issue with the magistrate judge's conclusion that Davis's statements were "ambiguous," arguing, based on Davis's statement to SLED, "[t]here is no possible meaning in the record nor is Davis's statement 'unclear' about whether he was in fear for his life after the pistol was seen, commands were ignored, and the decedent turned to face the officer." *Id.* at 10–11.

The undersigned agrees with Davis to the extent the undisputed evidence shows that J.R. ran from Davis, was armed, ignored commands to stop, and turned his face to the officer. The magistrate judge did not ignore or dismiss this evidence, but correctly found that, taking this evidence in light most favorable to Plaintiff, a reasonable jury could conclude that a reasonable officer in Davis's place would not have believed J.R. to pose an immediate threat to his safety. Rather, a reasonable jury could conclude that J.R. was attempting to evade arrest by flight and was shot in so doing.[9]

The court rejects Davis's arguments that still shots from the relevant camera footage indicate "furtive movements" where these shots are far from conclusive and must be viewed in the light most favorable to Plaintiff:

---

[9] To the extent that the court should consider the third *Garner* factor, it appears undisputed that J.R. was attempting to evade arrest by flight. But the court does not find this dispositive. As stated by the Fourth Circuit, also applicable here, "[a]s the first and third *Graham* factors offer only limited probative guidance, [the Davis's] claim to qualified immunity rests on the strength of the second—whether Knibbs posed an immediate threat to his life." *Knibbs*, 30 F.4th at 216.









ECF No. 83 at 13–14. Likewise, the court does not find persuasive Davis's invocation of *McCree*

*v. City of Chester*, No. CV 0:20-867-JFA-PJG, 2023 WL 1814175, ECF No. 233 at *37 (D.S.C. Feb. 8, 2023), where the undisputed evidence showed the decedent pointed a gun at the officer less than 10 feet away, though with his wrists handcuffed behind his back.[10]

### D. Qualified Immunity

In his next objection, Davis argues that he is entitled to qualified immunity because case law does not clearly establish a right to be free from deadly force under these circumstances. Davis maintains the magistrate judge's reasoning was flawed because he failed to consider whether there was an immediate threat at "the moment the deadly force was used" since Plaintiff concedes that J.R. turned to face the officer with weapon in hand. ECF No. 83 at 18 ("[T]he Court erred in failing to properly analyze the moment deadly force was used to determine the existence of an immediate threat of harm and failed to consider that the furtive movement, that the decedent turned to face the officer with a weapon in his hand, is conceded by the Plaintiff."). But the court overrules this objection for reasons already stated and because this objection is based on Davis's incorrect assertion that the undisputed evidence shows J.R. raised his firing arm at Davis. *See id.* at 19–20.[11]

Davis cites cases for the proposition that "a suspect does not have a constitutional right to be free from excessive force when they 1) know that police are in pursuit; 2) repeatedly refuse commands; 3) are within firing distance; 4) draw a weapon (whether innocent or not); and face or

---

[10] Davis argues, without supporting case law, that "[w]e know that the furtive moment by the decedent in this case is that he turned in a look-back movement that the officer perceived was to 'gain sight.'" ECF No. at 83 at 11, *see also id.* at 15. But none of the case law cited by Davis equate turning one's head while running as a threatening movement sufficient to justify the use of deadly force.

[11] The court also overrules Davis's objection that appears to be grounded in the incorrect argument that the magistrate judge "found that it was objectively reasonable for Davis to perceive a deadly threat at the decedent crouched down and raised his weapon," but where the magistrate judge did not reach that conclusion. *See* ECF No. 83 at 16–18 (citing ECF No. 79 at 17).

16

otherwise make a gesture towards the officer." *Id.* at 23–24.

The court finds the cases cited by Davis distinguishable, as discussed above. *See Leavitt*, 99 F.3d at 642; *Greenidge*, 927 F.2d at 790; *Slattery,* 939 F.2d at 215; *see also Franklin v. City of Charlotte*, 64 F.4th 519, 532 (4th Cir. 2023) (carrying a weapon with a threatening movement in the presence of law enforcement may justify the use of deadly force); *see also id.* at 535 ("And in any event, '[n]on-cooperation with law enforcement has never given officers carte blanche to use deadly force against a suspect.'") (citing *Est. of Jones by Jones v. City of Martinsburg, W. Virginia*, 961 F.3d 661, 670–71 (4th Cir. 2020), as amended (June 10, 2020)).

The Fourth Circuit has held "simply being armed is insufficient to justify deadly force." *Est. of Jones*, 961 F.3d at 670 (citing *Henry v. Purnell*, 652 F.3d 524, 534 (4th Cir. 2011), for the proposition that "shooting a 'fleeing, nonthreatening misdemeanant' was unlawful, even when the suspect had a firearm"); *see also id.* at 670–71 ("The Defendants portray Jones as a fleeing, armed suspect, who was not cooperating with law enforcement and had even reportedly 'hit' an officer, displacing that officer's hat. Non-cooperation with law enforcement has never given officers carte blanche to use deadly force against a suspect; luckily for many of us, neither has being 'armed' with a small knife. Jones was not an armed felon on the run, nor a fleeing suspect luring officers into a high-speed car chase."); *Young v. Prince George's Cnty., Maryland*, 355 F.3d 751, 757 (4th Cir. 2004) ("The fact that a suspect is armed, however, does not render all force used by an officer reasonable.").[12]

Because the key facts remain disputed, and because case law establishes that officers may

---

[12] As noted by the magistrate judge, ECF No. 79 at 23, the Fourth Circuit has "a split burden of proof for the qualified-immunity defense." *Stanton*, 24 F.4th at 233. "The plaintiff bears the burden on the first prong, and the officer bears the burden on the second prong." *Id.* (citing *Purnell*, 501 F.3d at 377–78 & n.4). As such, it is Davis's burden to establish that any alleged constitutional violation was not clearly established at the time of the incident.

17

not use deadly force absent an immediate threat, the magistrate judge correctly denied qualified immunity. The court overrules Davis's final objection.

## CONCLUSION

For these reasons, the court adopts the Report, ECF No. 79, and incorporates it herein. Plaintiff's motion to strike is **DENIED**, ECF No. 61, and Davis's motion for summary judgment, ECF No. 55, is accordingly **DENIED** in part, allowing Plaintiff's first cause of action for excessive force under the Fourth Amendment to proceed to trial.

**IT IS SO ORDERED.**

February 27, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge